UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
    MOSHEN BANAFSHEH                       )        Case No. 05-14283-SSM
                                          )        Chapter 7
                    Debtor                )

**MEMORANDUM OPINION**

This matter is before the court on an order — issued on the motion of Richard A.

Bartl, chapter 7 trustee — requiring the debtor to show why he should not be held in civil

contempt for violation of an order to turn over the funds in a stock trading account.

Hearings were held in open court on May 16, May 30, June 20, and July 17, 2006.  The

debtor was present in person at all the hearings (except the one on June 20th) and was

represented by counsel.  At the June 20th hearing, the court ruled, for reasons stated from

the bench, that the debtor would be held in civil contempt.  However, because the records

available at that hearing were insufficient to determine the loss caused by the failure to

comply with the turnover order, the court did not impose sanctions at that time but continued

the matter for further hearing.

<u>Background</u>

Moshen Banafsheh (also known as Moshen Banafsheh-Zanjani) filed a voluntary

petition for relief under chapter 7 of the Bankruptcy Code in this court on October 7, 2005.

Shortly prior to the scheduled meeting of creditors, the debtor filed a motion to convert his

case to chapter 13, and the case was converted on November 16, 2005.  An order was

entered on January 11, 2006, after the debtor failed to file a plan, reconverting the case to

chapter 7.  Richard A. Bartl was appointed as the chapter 7 trustee both initially and after the

reconversion.

The original schedules filed by the debtor did not list any interest in stocks or a stock

trading account.  Following the conversion to chapter 13, however, the debtor filed amended

schedules listing E*Trade and Ameritrade accounts valued at $96,500 as of November 14,

2005.[1]  The meeting of creditors in the converted case was held on February 9, 2006.  When

the debtor did not comply with the trustee's request at the meeting of creditors to turn over

the funds in the E*Trade account, the trustee filed a motion for turnover on March 9, 2006.

The debtor filed a response stating that he was attempting to make direct payment to his

creditors and explaining: "I am using my E-Trade account, which is performing well, as

collateral to pay off my personal loans to friends and family at a later date.  This is why I

have not turned the account over to the trustees [*sic*]."

Following a hearing on April 4, 2006, the court entered an order on April 6, 2006,

granting the trustee's motion and directing the debtor, within 15 days of the entry of the

---

[1] Both the original and the amended schedules stated  "none" where the debtor was asked to
list interests in IRA, ERISA, Keogh, or other pension or profit sharing plans.  As it turns out,
the debtor was a participant in a 401(k) retirement savings plan sponsored by his former
employer, Sport & Health, Inc.  The value of his 401(k) account on the date of the
bankruptcy petition was approximately $82,219, subject to a loan balance of $3,505.
Following the reconversion of his case to chapter 7, the debtor transferred the funds in the
401(k) account to an E*Trade IRA roll-over account.  The 401(k) plan, to the extent it is
governed by the Employee Retirement Income Security Act, would not be property of the
bankruptcy estate.  *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519
(1992); § 541(c)(2), Bankruptcy Code.  Regardless of whether the debtor's beneficial interest in
the plan was property of the estate, however, it was property of the debtor and was required to be
listed on the schedule of assets.

order, "to turn over to the Trustee the proceeds of the E-Trade account and to account for

any funds lost or expended as a result of [the debtor's] failure to turn over funds

immediately subsequent to the § 341 meeting." Order at 1. When the debtor did not do so,

the trustee filed a motion on April 24, 2006, for the debtor to show cause why he should not

be held in contempt.[2] An order to show cause was entered the following day, returnable to

May 30, 2006. Following that hearing — at which it was represented that E*Trade had

frozen the account, thereby preventing the debtor from directly complying with the turnover

order — the court entered an order on June 2, 2006, directing E*Trade to pay the account

balance over to the trustee. The trustee advises that he has received from E*Trade the sum

of $29,966.63.

The trustee also received, shortly before the July 17th hearing, account statements

covering the periods from September 30, 2005, through October 31, 2005; January 31, 2006,

through February 28, 2006; and March 31, 2006, through April 30, 2006. Each statement

includes a graph showing the percentage changes in the net account value for each of the 12

preceding months. Those percentage change figures enable the dollar value to be calculated

for those months for which statements were not provided. Based on those calculations and

the account statements, the end-of-month net balances for the account were as follows:

| Date | Balance | Change |
|------|---------|--------|
| 09/30/2005 | $108,285 | |
| 10/31/2005 | $90,608 | -16.32% |
| 11/30/2005 | $71,082 | -21.55% |
| 12/31/2005 | $74,046 | 4.17% |
| 01/31/2006 | $85,428 | 15.37% |

---

[2] In the interim, the debtor had been granted a discharge on April 17, 2006. The United
States Trustee has brought an adversary proceeding, which is currently pending, to revoke
the discharge.

3

| | | |
|---|---|---|
| 02/28/2006 | $120,699 | 41.29% |
| 03/31/2006 | $150,827 | 24.96% |
| 04/30/2006 | $132,901 | -11.89% |

The account statements do not, unfortunately, readily permit the account balance to be determined for specific days within the month.  The statements show the dates and amounts of trades that were made, but do not show the daily changes in the value of the securities held in the account, nor do they show the margin interest rate or how much of the account value was on margin.  The debtor, moreover, was heavily involved in short sales, and it is difficult to match the short sales on any given statement to the covers that had not yet settled.  The best that can be done, under the circumstances, is a simple linear interpolation.  The resulting estimates are as follows:

| Event | Date | Balance |
|---|---|---|
| Petition Date | 10/07/2006 | $104,293 |
| 341 Date | 02/09/2006 | $96,765 |
| Turnover Compliance Date | 04/21/2006 | $138,279 |

Discussion

I.

A bankruptcy court has civil contempt powers to enforce its orders and to carry out the provisions of the Bankruptcy Code.  *Burd v. Walters*, 868 F.2d 665 (4th Cir. 1989).  Civil contempt is remedial and coercive in nature, unlike criminal contempt, the purpose of which is to punish.  *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 168 B.R. 285, 288 (Bankr. S.D. N.Y. 1994) ("Civil contempt proceedings can be coercive or compensatory.  Coercive civil contempt imposes sanctions, such as fines or imprisonment, to compel compliance with the court's orders; compensatory civil contempt attempts to indemnify the injured party for the

4

damage caused by the contempt.").  To establish civil contempt, a movant must show each of the

following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or
> constructive knowledge; (2) . . . that the decree was in the movant's "favor";
> (3) . . . that the alleged contemnor by its conduct violated the terms of the decree,
> and had knowledge of such violations; and (4) . . . that [the] movant suffered
> harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (citation omitted); *JTH Tax, Inc. v.

H&R Block Eastern Tax Services, Inc.*, 359 F.3d 699, 705 (4th Cir. 2004).

## II.

The debtor does not deny that he had knowledge of the turnover order and does not deny

that the order was valid.  That the order was in the trustee's favor and that the debtor violated

the order are likewise not in dispute.  The debtor's position, essentially, is that he had a good

reason not to turn over the account because he hoped to have his case dismissed and to deal

directly with his creditors.  A debtor, however, has no absolute right to dismiss a chapter 7

case.  *In re Komyathy,* 142 B.R. 755 (Bankr. E.D. Va. 1992) (denying debtor's motion for

voluntary dismissal of her chapter 7 case based on her receipt, shortly after the case was

filed, of an inheritance sufficient to pay all creditors, where chapter 7 trustee could ensure all

creditors were paid and unsecured creditors would not have same guarantee of payment if

case were dismissed).  Unless and until the case is dismissed, a debtor has a statutory

obligation to turn over to the trustee, and account for, any property of more than

inconsequential value that the trustee would be entitled to use or sell.  § 542(a), Bankruptcy

Code.  In this connection, property of the bankruptcy estate includes "all legal or equitable

interests of the debtor in property as of the commencement of the case."  § 541(a)(1),

5

Bankruptcy Code.  The conversion of the case from chapter 7 to chapter 13 removed the

immediate requirement for turnover, since a chapter 13 debtor has, exclusive of the trustee,

the power to use and sell property of the estate.  § 1303, Bankruptcy Code.  However, once

the case was reconverted to chapter 7, the duty of turnover again arose.  To the extent there

may have been any doubt on that point, it was removed by the turn-over order.  That the

debtor may have intended no harm to his creditors by not immediately complying with the

trustee's turnover demand at the meeting of creditors or with the subsequent order directing

turnover may be a matter in mitigation, but it is no defense.

Finally, it  is beyond dispute that the trustee has suffered harm from the debtor's

failure to comply with the turnover order.  On the date of the meeting of creditors, the value

of the account was $96,765.  On April 21, 2006— the last day for compliance with the

turnover order— the value of the account was $138,279.  The amount ultimately turned over

to the trustee was $29,967.  By any measure, the debtor's non-compliance with the turnover

obligation has resulted in serious loss to the bankruptcy estate.

There remains the issue of sanctions.  As noted, sanctions for civil contempt may be

either coercive or compensatory.  Since the E*Trade trading account has now been

liquidated and turned over to the trustee, coercive sanctions are not appropriate.

Compensatory sanctions, however, are clearly appropriate.  What is less clear is the

appropriate amount of those sanctions.  Whether because of normal movements in the stock

market or the debtor's energetic day-trading or both, the value of the account decreased

slightly for the three months or so after the filing of the petition, but then jumped

dramatically, peaking approximately a month and a half after the meeting of creditors,

6

before beginning a sustained decline.  Because the value of the account was lower on the

date of the meeting of creditors than on April 21, 2006 (the last date for compliance with the

turnover order), the court believes it appropriate to cap the loss at the difference between

what the trustee would have received had the debtor liquidated the account on that

immediately following the meeting of creditors—which the court has estimated to be

$96,765—and the amount the trustee actually received, $29,966.63.  For that reason, a

separate order will be entered adjudging the debtor in civil contempt and imposing

compensatory sanctions against the debtor in the amount of $66,798.37.


Date: _____        _____
                                    Stephen S. Mitchell
Alexandria, Virginia                United States Bankruptcy Judge


Copies to:

Moshen Banafsheh
125 South Columbus St.
Arlington, VA  22204
Debtor

John W. Bevis, Esquire
10521 Judicial Drive, Suite 204
Fairfax, VA  22030
Counsel for the Debtor

Richard A. Bartl, Esquire
Tyler, Bartl, Gorman & Ramsdell, PLC
700 S. Washington St., Suite 216
Alexandria, VA  22314

Jack Frankel, Esquire
Office of the United States Trustee
115 South Union St., Suite 210
Alexandria, VA  22314